Mark M. Kovacich
Ross T. Johnson
ODEGAARD KOVACICH SNIPES, P.C.
P.O. Box 2325
Great Falls, MT  59403
(406) 222-2222
mark@mtlawyers.com
ross@mtlawyers.com

Gale R. Gustafson
Daniel T. Jones
Fernando J. Terrones
GUSTAFSON LAW OFFICES
400 South Main Street, Suite 101
Conrad, MT 59425
(406) 278-7521
gustafsn@3rivers.net
djones@glo.law
fterrones@glo.law

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

_____

| | | |
|---|---|---|
| CODY MARBLE, | ) | CAUSE NO. CV-20-89-M-DLC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **PLAINTIFF'S BRIEF OPPOSING** |
| | ) | **LAW ENFORCEMENT** |
| MISSOULA COUNTY; MICHAEL | ) | **DEFENDANTS' MOTION TO** |
| McMEEKIN; BRAD GIFFIN; JEREMY | ) | **DISMISS** |
| MEEDER; MICHAEL DOMINICK; | ) | |
| ROBERT TAYLOR; MISSOULA | ) | |
| COUNTY SHERIFF'S OFFICE; FRED | ) | |
| VAN VALKENBURG; JENNIFER | ) | |
| CLARK fka JENNIFER JOHNSON; | ) | |

DOROTHY BROWNLOW; ANDREW        )
PAUL; MISSOULA COUNTY           )
ATTORNEY'S OFFICE; and JOHN     )
DOES 1-5,                       )
                                )
                Defendants.     )
_____

**<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.    The Complaint sufficiently pleads a claim against McMeekin
      for malicious prosecution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.    Marble's § 1983 claim for malicious prosecution put
            McMeekin on notice of the claims against him  . . . . . . . . . . . . . . . . 7

II.   Marble's § 1983 claims for fabrication of evidence clearly states
      claims against McMeekin and Dominick  . . . . . . . . . . . . . . . . . . . . . . . . . 9

III.  Marble's Complaint squarely alleges facts and a cause of action
      for destruction and suppression of exculpatory evidence in
      violation of *Brady* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV.   Marble's § 1983 claims for failure to intercede against Law
      Enforcement Defendants are well pled . . . . . . . . . . . . . . . . . . . . . . . . . . 12

V.    Marble's § 1983 claims for wrongful conviction and incarceration
      are well pled . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

VI.   Marble's § 1983 claims for reckless and intentional failure to
      investigate are well pled. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

VII.  Marble's state law claims are not barred by the statute of limitations. . . . . 16

      A.    Marble's malicious prosecution claims against all
            Defendants, including Law Enforcement Defendants,
            were timely filed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

i

## <u>TABLE OF CONTENTS (continued)</u>

B.   Marble's claims for Defendants' violations of his rights
as protected by Article II, § 16 of the Montana
Constitution were timely filed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

C.   Marble's claims for negligence, NIED, and IIED were
timely filed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

1.   Marble's state law claims do not arise from
legal malpractice accruing prior to the conviction . . . . . . . . 22

2.   Marble did not have notice of Missoula County's
negligent conduct until admissions were made in
Pabst's original motion to dismiss . . . . . . . . . . . . . . . . . . . . . 24

VIII.   Alternatively, Marble moves for leave to amend his Complaint
to cure its defects, if any . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# TABLE OF AUTHORITIES

## CASES

*Akins v. Epperly*
     588 F.3d 1178 (8th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Atkins v. Cty. of Riverside*
     151 F.App'x 501 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

*Bell Atl. Corp. v. Twombly*
     550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 25

*Blinka v. Washington State Bar Association*
     109 Wash.App. 575, 36 P.3d 1094 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Brady v. Maryland*
     373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) . . . . . . . . . 10, 11, 12, 14

*Broam v. Bogan*
     320 F.3d 1023 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Cunningham v. City of Wenatchee*
     345 F.3d 802 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Devereaux v. Abbey*
     263 F.3d 1070 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Dorwart v. Caraway*
     2002 MT 240, 312 Mont. 1, 58 P.3d 128 . . . . . . . . . . . . . . 17, 19, 20, 21, 22

*Ereth v. Cascade County*
     81 P.3d 463 (Mont. 2003)
     *overruled by*
     *Labair v. Carey,* 291 P.3d 1160 (Mont. 2012) . . . . . . . . . . . . . . . . . . . 20, 22

*Gausvik v. Perez*
     239 F. Supp.2d 1067 (E.D.Wash. 2002)
     *reversed by* 392 F.3d 1006 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 20

## <u>TABLE OF AUTHORITIES (continued)</u>

*Gen-Probe, Inc. v. Amoco Corp. Inc.*
  926 F.Supp. 948 (S.D. Cal. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Gomez v. Whitney*
  757 F.2d 1005 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Hageman v. Bates*
  2007 WL 927584 (D. Mont. Mar. 23, 2007) . . . . . . . . . . . . . . . . . . . . . . . 16

*Kloss v. Edward D. Jones & Co.*
  2002 MT 129, 310 Mont. 123, 54 P.3d 1
  *on reh'g in part*, 2002 MT 129A, 57 P.3d 41 . . . . . . . . . . . . . . . . . . . . . . . 21

*Lopez v. Smith*
  203 F.3d 1122 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 24

*La Grasta v. First Union Sec., Inc.*
  358 F.3d 840 (11th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Parish v. City of Elkhart*
  614 F.3d 677 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Reid v. Pierce Cty.*
  136 Wash.2d 195, 961 P.2d 333 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Rouse v. Anaconda-Deer Lodge Cty.*
  250 Mont. 1, 817 P.2d 690 (1991)
  *overruled on other grounds by*
  *Stratemeyer v. Lincoln Cty.*, 276 Mont. 67, 915 P.2d 175 (1996) . . . . 18, 19

*Tatum v. Moody*
  768 F.3d 806 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Tennison v. City & County of San Francisco*
  570 F.3d 1078 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## **TABLE OF AUTHORITIES (continued)**

*Whitley v. Allegheny Cty.*
    2010 WL 892207 (W.D. Pa. Mar. 9, 2010)
    *aff'd*, 402 F.App'x 713 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Wilson v. Maricopa Cty.*
    463 F. Supp. 2d 987 (D. Ariz. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## **RULES**

Local Rule 26.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Rule 8(a), F.R.Civ.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Rule 8(a)(2), F.R.Civ.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Rule 12(b)(6), F.R.Civ.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 16

Rule 15, F.R.Civ.P.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Rule 15(a), F.R.Civ.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 25

Rule 26, F.R.Civ.P.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## **STATUTES**

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

§ 27-2-102(1)(a), MCA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

§ 46-18-201, MCA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## **OTHER AUTHORITY**

Montana Constitution, Article II, § 16. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## INTRODUCTION

Plaintiff, Cody Marble ("Marble"), submits the following response brief opposing Defendants Michael McMeekin ("McMeekin"), Brad Giffin ("Giffin"), Jeremy Meeder ("Meeder"), Michael Dominick ("Dominick"), and Robert Taylor's ("Taylor") Motion to Dismiss (June 26, 2020) (Doc. 8), and Brief in Support (June 26, 2020) (Doc. 9) ("Law Enforcement Defendants' Brief"). Marble requests the Court deny the Motion to Dismiss in total, with the limited exception of Marble's § 1983 false arrest claims. Alternatively, Marble filed his Second Amended Complaint & Jury Demand on February 28, 2020 (Doc. 3) ("Complaint").

On January 3, 2019, Marble filed his Complaint in the Fourth Judicial District Court, Missoula County, Montana. See Complaint, p. 1. The  Law Enforcement Defendants removed this matter to this Court on June 19, 2020. See Notice of Removal (Doc. 1). The pending Motion to Dismiss is the Law Enforcement Defendants' first responsive pleading. The prosecutors involved in this case also filed respective motions to dismiss.  To date, the parties have neither engaged in discovery nor exchanged initial disclosures pursuant to Rule 26, F.R.Civ.P., and Local Rule 26.1.

## BACKGROUND

Marble was convicted of raping another juvenile inmate on November 22, 2002.  The conviction for this horrible and despicable act caused him great grief and

1

despair, and cost him his freedom and future.  After 15 years of fighting for his innocence, Missoula County District Court Judge Edward McLean vacated Marble's conviction on January 3, 2017, and ordered a new trial, finding that testimony given "undermined confidence in the conviction against Cody Marble, who was 17 when he was charged with raping a 13 year old boy."  Complaint, ¶ 109.  On January 6, 2017, Judge McLean granted Missoula County Attorney Pabst's motion to dismiss the charges against Marble.  Complaint, ¶ 110.

On March 17, 2002, Missoula County Sheriff's Deputy Meeder and Sergeant Dominick arrested then 17 year old Marble at his home in Missoula County, Montana.  Complaint, ¶ 6.  Sergeant Dominick advised Marble's father, Jerry Marble, that the Sheriff's Department had audio/video evidence that Marble had raped another inmate while in the Missoula County Juvenile Detention Center.  Complaint, ¶ 8. Dominick and Meeder arrested Marble without an arrest warrant or probable cause. Complaint, ¶ 6.

Prior to this arrest, Marble and the Missoula County Sheriff's Department had a sordid history.  Deputy Taylor had previously spit in Marble's face, and shoved and kicked him to the ground.  Complaint, ¶ 47.  This altercation left Taylor with a sanction  imposed by his captain and a vendetta against Marble.  Id.

The investigation into Marble began when Scott Kruse ("Kruse"), a level 1 detainee, incarcerated for murder, falsely reported on March 16, 2002, that Marble

had raped inmate Robert Thomas ("Thomas") on March 10, 2002, in the C Pod of the detention center. Complaint, ¶¶ 10-11, 13.[1] Later that day, Dominick reviewed the videotape alongside Detention Officer Wendy Nelson. Dominick was unable to corroborate the alleged rape with the surveillance footage. Complaint, ¶ 16. Dominick refused to familiarize himself with the layout of the C Pod so he could juxtapose this evidence with the conflicting stories from Kruse and others. Complaint, ¶ 17. Despite inconsistent statements and physical impossibility, Dominick later concluded that the videotape actually corroborated the allegations. Complaint, ¶ 41. Had Dominick walked through C Pod and learned where the cameras were and what evidence they demonstrate, he would have known the allegations against Marble were false. Instead of determining the layout of C Pod, Dominick and Taylor conspired to make "Marble's and Jerry Marble's lives hell." Complaint, ¶ 55.

Deputy Giffin interviewed several inmates at the detention center with regards to Kruse's allegations. He first interviewed Nicholas Melton-Roberts, who alleged he witnessed Thomas with his pants down and Marble directly behind him for 5-10 minutes. Complaint, ¶ 25. Next, Giffin interviewed Russell Miller ("Miller"), who reported that his story was that Miller saw oral sex performed. Complaint, ¶ 26. Not

---

[1] Level 1 detainees were the most restricted and least trusted, whereas the least restricted and most trusted were assigned level 3. Marble was a level 3 detainee. Id.

liking that story, Giffin pressed Miller until Miller changed his story to say he witnessed anal sex. Complaint, ¶ 26. Giffin then interviewed Gregory Van Mueller ("Van Mueller"). Van Mueller admitted to Giffin that he did not witness anything, he just heard about it. Complaint, ¶ 27. Near the end of the interview, Van Mueller changed his story and said he saw Marble and Thomas going into the shower area together. Id. Next, Giffin interviewed Kruse, who said he personally saw the rape take place through a non-transparent wall. Complaint, ¶ 28. Given Kruse's level 1 designation for murder, he was on lock down at the time of the alleged rape, and had no view of the C Pod shower area. Complaint, ¶ 29. Shortly after Kruse made up this story about Marble, Missoula County Attorney Defendant Dorothy Brownlow ("Brownlow") amended Kruse's homicide charge to a misdemeanor, and allowed him to be released from custody. Complaint, ¶ 31. Finally, Giffin interviewed detainee Justin Morin ("Morin"). Morin first stated he witnessed the rape through the non-transparent wall. He then changed his story, telling Giffin he believed Marble raped Thomas because he was red when he exited the shower area. Complaint, ¶ 33. Giffin disregarded the inconsistencies between each story as well as the physical impossibility of the alleged conduct in fabricating the charges against Marble. Complaint, ¶¶ 42-43.

Shockingly, Law Enforcement Defendants willfully chose to not interview the Detention Officers who were on duty at time of the alleged rape. Detention Officer

Susan Johnson Latimer, who was on duty at the night of the false rape allegation, did not witness Marble commit a crime.  Complaint, ¶ 51.  Additionally, due to the layout of the C Pod, the commencement of this heinous sex crime would have been noticed by personnel in the control room and while doing walkthroughs and cell checks.  Id. The detention center log for March 10, 2002, reveals that the four Detention Officers had performed overlapping walkthroughs during the time of the alleged rape.  Id.

Following lengthy post-conviction litigation, including an appeal to the Montana Supreme Court and a subsequent remand, Missoula County Attorney Pabst recognized that her department had committed a miscarriage of justice by prosecuting this case given the facts of this case, she filed a motion to dismiss the charges in April of 2016.  Complaint, ¶ 110.

## LEGAL STANDARD

Rule 12(b)(6) motions are "viewed with disfavor."  *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).  "When ruling on a 12(b)(6) motion, the complaint must be construed in the light most favorable to the plaintiff. The court must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn from them."  *Broam*, 320 F.3d at 1028.

Rule 8(a)(2), F.R.Civ.P., requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  To survive Rule 12(b)(6), a complaint must plead sufficient "fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp.,* at 556.

"In dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

> [L]eave to amend should be freely granted 'when justice so requires.'
> Although Rule 15(a) gives the trial court discretion over this matter, we
> have repeatedly stressed that the court must remain guided by 'the
> underlying purpose of Rule 15 . . . to facilitate decision on the merits,
> rather than on the pleadings or technicalities.'

*Lopez*, 203 F.3d at 1127 (citations omitted). "Dismissal without leave to amend is proper only in 'extraordinary' cases." *Broam*, 320 F.3d at 1028.

Per § 1983, a defendant is "responsible for the natural consequences of his actions." *Tatum v. Moody*, 768 F.3d 806, 817 (9th Cir. 2014) (citations omitted). "Thus, a § 1983 defendant is liable for setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Tatum*, 768 F.3d at 817.

## ARGUMENT

The Complaint filed by Marble put the Law Enforcement Defendants squarely on notice of the claims made against them, and why such claims were made.  Law Enforcement Defendants' repeated argument that Marble relies on "group pleading" and "naked assertions," ignores the hundreds of factual allegations to the contrary, common sense inferences, and a plain reading of the Complaint as a whole.  Any suggestion Marble's Complaint is an "unadorned, the-defendant-unlawfully-harmed-me accusation" would be without merit.  With the exception of the § 1983 false arrest claim, Law Enforcement Defendants' Motion to Dismiss should be denied. Alternatively, should the Court grant Law Enforcement Defendants' motion on any points opposed herein, Marble respectfully asks the Court for leave to amend.

**I.    The Complaint sufficiently pleads a claim against McMeekin for malicious prosecution.**

**A.    Marble's § 1983 claim for malicious prosecution put McMeekin on notice of the claims against him.**

Law Enforcement Defendants claim Marble's only allegation against McMeekin is that "he believed the juvenile detainees' and victim's statements rather than the juvenile detention officer's statement."  Law Enforcement Def.'s brief, p. 15. Initially, Law Enforcement Defendants' perception of Marble's Complaint is skewed. Law Enforcement Defendants gloss over the importance of the alleged facts. Defendants omit that Marble's Complaint alleged that McMeekin knew the

supporting witness statements were all contradictory and the Juvenile Detention Officers stated the rape was "impossible to have happened," yet McMeekin continued to prosecute him.  Complaint, ¶¶ 12, 148.

Under Count II, malicious prosecution, Marble names McMeekin and further alleges that he caused a criminal prosecution against him, instituted with malice, using improper and inadequate investigative techniques, and pressured and incentivized juvenile detainee witnesses.  Complaint, ¶ 148.  At the time of the investigation, McMeekin was the Missoula County Sheriff.  Complaint, ¶ 12.  Marble further alleged that McMeekin acted in concert with the other Defendants, including overseeing the officers who personally conducted the unlawful investigation.  Complaint, ¶¶ 159, 239, 243.

Plaintiff need only plead "fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  Here, Marble's allegations would certainly raise a reasonable expectation that discovery will reveal evidence of McMeekin's tortious conduct.  Liability "may be imposed against an official in his individual capacity for his own culpable actions or inactions if he fails to properly supervise and control subordinates; acquiesces in the constitutional deprivations complained of; or engages in conduct that shows 'reckless or callous indifference' to the rights of others." *Wilson v. Maricopa Cty.*, 463 F. Supp. 2d 987, 995 (D. Ariz. 2006).

McMeekin is clearly on notice that the claims against him stem from a shoddy and unlawful investigation into Marble that precipitated his prosecution. Finally, Marble's Complaint, along with the reasonable inference that McMeekin had some control over his investigating officers, evidences ample pleading.

## II. Marble's § 1983 claims for fabrication of evidence sufficiently states claims against McMeekin and Dominick.

Notably, Law Enforcement Defendants only seek dismissal of the fabrication claim for McMeekin, Dominick, and Meeder. To state a claim, Marble need only to show either "Defendants continued their investigation of [Marble] despite the fact that they knew or should have known that he was innocent" or "[d]efendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

The Complaint squarely alleges facts against Dominick which form the basis of Marble's § 1983 fabrication claim. Here, Dominick continued his investigation despite reviewing the surveillance videotape. Complaint, ¶¶ 15-17. If Dominick had done the minimum, and figured out where the cameras were in conjunction with the layout of the C Pod, he would have figured out that this crime could not have happened as alleged. Whether Dominick actually knew Marble was innocent or not, he "should have known he was innocent." Further, as Dominick and Giffin were

9

investigating the case together, it can be reasonably inferred that their investigative tactics were discussed and implemented in collaboration.  Dominick should have known that the tactics used by Giffin were coercive, abusive, and would yield false information.

As discussed supra, it can be reasonably inferred that Sheriff McMeekin was in charge of all officers involved in the investigation, and the investigation itself.  As the Sheriff, McMeekin provided oversight for the investigation, is the person who dictated whether or not an investigation should continue, and was the final say in whether or not it should continue given the facts that should have been reasonably known.  McMeekin should have known that the tactics used by Giffin were coercive, abusive, and would yield false information.

## III.   Marble's Complaint squarely alleges facts and a cause of action for destruction and suppression of exculpatory evidence in violation of *Brady.*

Law Enforcement Defendants' bald assertion that Marble's *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), claim is "unclear" ignores the clearly pled allegations against them. "A destruction claim implicates a law enforcement officer's bad faith "failure to preserve or collect exculpatory evidence." Law Enforcement Def.'s brief, p. 21, citing *Cunningham v. City of Wenatchee*, 345 F.3d 802, 812 (9th Cir. 2003).  This same principle extends to impeachment evidence. *Atkins v. Cty. of Riverside*, 151 F.App'x 501, 504 (9th Cir. 2005).

In *Atkins*, the plaintiff was exonerated via DNA evidence for a sex crime he did not commit after serving eight years. *Atkins*, 151 F.App'x at 503.  The Court found the plaintiff to have provided sufficient evidence supporting a *Brady* claim based on the failure of the defendant police officers to disclose that one had created false evidence, as it is reasonable that "disclosure of such information would have changed the outcome of the case." *Atkins*, 151 F.App'x at 504.

Here, like in *Atkins*, Marble alleged that the Law Enforcement Defendants created false evidence, and subsequently failed to disclose their actions to Marble. Specifically, Marble alleged that the Missoula county prosecutors met with Law Enforcement Defendants to come up with a result oriented investigation of Marble. Complaint, ¶¶ 21-22.  In keeping with the goal of the investigation, to put Marble away, Law Enforcement Defendants created false evidence by ignoring obviously exculpatory evidence, correcting witness statements, and incentivizing witnesses to lie (i.e. Complaint, ¶¶ 24-51).  Putting an innocent 17 year old boy away for rape, to make up for a prior incident where Taylor assaulted Marble and was reprimanded, is clearly bad faith.

To prevail on the suppression claim, Marble need only show "that police officers acted with deliberate indifference to or reckless disregard for an accused's rights or for the truth in withholding evidence." *Tennison v. City & County of San Francisco*, 570 F.3d 1078, 1088 (9th Cir. 2009).  "The fact that police fabricated

inculpatory evidence, if true, can have both exculpatory and impeachment value. The state has the obligation to not suppress such information." *Atkins*, 151 F.App'x at 506.

Similarly, the same set of facts, taken as true, establish a suppression claim. The Law Enforcement Defendants acted in concert to make sure each witness' statement lined up with the central accusation, that Marble anally raped Thomas in the shower. Not only did Law Enforcement Defendants ignore the impossibility of witness statements, they caused clearly exculpatory statements to be withheld by tampering, fabricating, and shaping the statements to fit their narrative. Marble clearly alleged these claims:

> The Defendants breached their duty under Brady and Title 46, Chapter 15, Part 3, MCA, by converting exculpatory evidence into inculpatory evidence or explaining away exculpatory evidence with fabricated inculpatory evidence.

Complaint, ¶ 230.

Law Enforcement Defendants have buried their heads in the sand, and now ask the Court to do the same. This Court should deny Law Enforcement Defendants' motion.

## IV.   Marble's § 1983 claims for failure to intercede against Law Enforcement Defendants are well pled.

Again, Law Enforcement Defendants fail to see the forest for the trees. Despite recognizing they "have a duty to intercede when their fellow officers violate the

constitutional rights of a suspect or other citizen," Law Enforcement Defendants seemingly claim ignorance of the actions of Giffin, Taylor, and Dominick. (Marble clearly pled claims against all Law Enforcement Defendants, naming them individually; see Complaint, ¶¶ 187-195). Clearly, Giffin should have been aware that his wrongful conduct would foreseeably implicate Marble's constitutional rights. Giffin could have interceded at any time after discovering the witness statements were all different, and all impossible. See Complaint, ¶¶ 22-29, 33, 35. Dominick, Giffin, and Taylor worked this case up together, and it is reasonably anticipated that further evidence will come to light through discovery that they were keenly aware of each other's actions. Moreover, it is reasonable to infer that their respective discoveries would have mandated intervention based on both the inconsistent witness statements and exculpatory video evidence.

Again, it can be reasonably inferred that Sheriff McMeekin was in charge of all officers involved in the investigation, and the investigation itself. As the Sheriff, McMeekin provided oversight for the investigation, is the person who dictated whether or not an investigation should continue, and whether he should intervene given the facts that he should have reasonably known, including Taylor's prior altercation with Marble resulting in sanctions against Taylor.

Law Enforcement Defendants' conclusory statement that Marble's allegations amount to "solely a group pleading," disregards literally hundreds of paragraphs of

factual allegations, and the "Setup of Cody Marble" as alleged.  To suggest that the investigating officers had no knowledge of each other's actions, especially the unconstitutional acts, ignores the entirety of Marble's Complaint.  Law Enforcement Defendants' motion should be denied.

## V.   Marble's § 1983 claims for wrongful conviction and incarceration are well pled.

Law Enforcement Defendants fail to cite any legal authority for their position that Marble's wrongful conviction and incarceration claims should be dismissed because they are "duplicative" of his malicious prosecution claim.  While these claims both stem from the same set of facts, they are routinely pled together.  Law Enforcement Defendants's motion should be denied.

## VI.  Marble's § 1983 claims for reckless and intentional failure to investigate are well pled.

Contrary to Law Enforcement Defendants' assertion, the "Eighth Circuit" does not stand alone in allowing failure to investigate claims.  Although intentional failure to investigate claims are not dissimilar to falsification/failure to produce exculpatory evidence *Brady* claims, law enforcement officers have a duty to reasonably investigate:

> Law enforcement officers, like prosecutors, have a responsibility to criminal defendants to conduct their investigations and prosecutions fairly as illustrated by the *Brady* line of cases requiring the state to disclose exculpatory evidence to the defense. Although charged with investigating and prosecuting the accused with "earnestness and vigor,"

14

officers must be faithful to the overriding interest that "justice shall be done."

*Whitley v. Allegheny Cty.*, No. CIV.A. 07-403, 2010 WL 892207, at \*34 (W.D. Pa. Mar. 9, 2010), *aff'd*, 402 F.App'x 713 (3d Cir. 2010). Like the Third Circuit, the Eighth Circuit also clearly recognizes § 1983 claims for reckless failure to investigate. *Akins v. Epperly*, 588 F.3d 1178, 1184 (8th Cir. 2009). The court in *Akins* discussed situations where this type of claim is appropriate. When investigators "purposefully ignore evidence suggesting the defendant's innocence," or apply "systematic pressure to implicate the defendant in the face of contrary evidence," such claims are appropriate. *Akins*, 588 F.3d at 1184.

The case law relied upon by Law Enforcement Defendants is inapposite. In *Gomez v. Whitney,* 757 F.2d 1005, 1006 (9th Cir. 1985), the plaintiff's son died while trespassing on a construction site with two other juveniles. The police conducted a cursory investigation and decided not to charge the other kids. The plaintiff sued the police department alleging an inadequate investigation. *Gomez*, 757 F.2d at 1006. There, the plaintiff claimed the right infringed was a "due process right to have a full and fair police investigation into violence done against themselves or their children." *Gomez*, 757 F.2d at 1006. The Court determined that this was not a recognized constitutional right. *Gomez*, 757 F.2d at 1006.

Unlike *Gomez*, Marble's constitutionally protected rights were at stake. Marble was jailed, subjected to trial, and subsequently had his freedom taken from him.

15

Unlike *Gomez*, this is an instance where there are other constitutionally recognized rights involved.   Marble's Complaint clearly alleges multiple Constitutional violations giving rise to his § 1983 claims, mostly arising out of his fundamental constitutional right of liberty.   The *Gomez* snippet relied upon by the Court in *Hageman v. Bates*, No. CV-06-09 MDWM, 2007 WL 927584, at *1 (D. Mont. Mar. 23, 2007), is simply not applicable here.

*Hageman* is similarly off topic.   There, plaintiffs sued state and local officials for inadequate investigation alleging the officials caused the loss of personal property. *Hageman*, at *1. "Judge Lynch observed that law enforcement officers generally do not have a duty to protect a person's property from invasion by private actors." *Hageman*, at *1.   This case is not about stolen property, but Marble's stolen liberty, and the process by which it was stolen.   These are clearly cognizable and constitutionally guaranteed rights that were taken by this reckless investigation.   Law Enforcement Defendants' motion should be denied.

## VII.   Marble's state law claims are not barred by the statute of limitations.

Plaintiffs are not required to plead around potential affirmative defenses, including statute of limitations defenses.   A statute of limitations bar is "an affirmative defense, and . . . plaintiff[s][are] not required to negate an affirmative defense in [their] complaint." Not surprisingly, our cases say that a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is "apparent from

the face of the complaint" that the claim is time-barred. "[F]or better or worse, the Federal *846 Rules of Civil Procedure do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal citations omitted). Regardless, Defendants' position that all Marble's state law claims are barred because he failed to assert them while he was rotting in prison for a crime he did not commit is unsupported by Montana law. First, Marble's malicious prosecution claim did not accrue until the underlying proceeding terminated in his favor. Next, Defendants fail to cite any Montana case law finding that Marble's *Dorwart v. Caraway*, 2002 MT 240, 312 Mont. 1, 58 P.3d 128, claims arising from the Montana constitution must have been asserted while Marble was incarcerated. In keeping with Montana's strong protection of fundamental constitutional rights, including the right to a jury trial, Marble's claims are not barred by the statutes of limitation. Moreover, the cases relied upon by Defendants' do not address the application of Montana law to negligent infliction of emotional distress or intentional infliction of emotional distress claims. Finally, Marble's claims for negligence did not accrue until he was apprised of the County's negligence via its Motion to Dismiss filed by Missoula County Attorney Pabst.

A.    **Marble's malicious prosecution claims against all Defendants, including Law Enforcement Defendants, were timely filed.**

Marble could not file his malicious prosecution claim until all elements of the claim or cause exist or have occurred. § 27-2-102(1)(a), MCA. The elements that must exist for the plaintiff to prevail on a malicious prosecution claim are:;

1.    A judicial proceeding commenced against the party alleging malicious prosecution;
2.    the other party's responsibility for instigating the proceeding;
3.    a want of probable cause for the other party's action;
4.    the existence of malice as the motivator behind the other party's action;
5.    **the termination of the proceeding in favor of the alleging party**; and
6.    damages suffered by the party alleging malicious prosecution.

*Rouse v. Anaconda-Deer Lodge Cty.*, 250 Mont. 1, 7, 817 P.2d 690, 693–94 (1991), *overruled on other grounds by Stratemeyer v. Lincoln Cty.*, 276 Mont. 67, 915 P.2d 175 (1996) (emphasis added). Defendants incorrectly assert that Marble's malicious prosecution claim accrued sometime in 2002. Law Enforcement Def.'s brief. p. 29.

In *Rouse*, the plaintiff asserted malicious prosecution claims against individual police officers and Anaconda-Deer Lodge County stemming from conduct occurring on October 25, 1984. *Rouse*, 817 P.2d at 691. In the aftermath of the October 25, 1984, incident, the county charged Rouse with assault on an officer. *Rouse*, 817 P.2d at 691. Following his acquittal in March of 1986, Rouse filed his wrongful prosecution action against the officers and the County on October 22, 1987. The

18

district court found that the statute of limitation barred Rouse's malicious prosecution claim and dismissed it. *Rouse*, 817 P.2d at 691.

The Montana Supreme Court reversed, finding that the cause of action had not accrued until Rouse was acquitted in March of 1986. Because the requisite element of termination of the proceedings in his favor had not occurred until his acquittal, his cause of action could not have existed until after the acquittal. *Rouse*, 817 P.2d at 694.

Here, like *Rouse*, Marble's Missoula County's motion to dismiss the rape allegations was granted on January 6, 2017. Marble's Complaint was filed January 3, 2019. Regardless of whether the applicable statute of limitation is two or three years, Marble's claim was timely filed.

**B.    Marble's claims for Defendants' violations of his rights as protected by Article II, § 16 of the Montana Constitution were timely filed.**

The Montana Supreme Court made it resoundingly clear that Marble's state law causes of action seeking money damages for Defendants' violations of his guaranteed constitutional rights found in Article II of the Montana Constitution are available. *Dorwart*, ¶ 48. In doing so, the Court further explained that Article II, § 16 of the Montana Constitution, guarantees that "[c]ourts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character." *Dorwart*, ¶ 67.

Defendants reliance on *Gausvik v. Perez,* 239 F. Supp.2d 1067, 1104-1105 (E.D.Wash. 2002)*, reversed by Gausvik v. Perez,* 392 F.3d 1006, 1009 (9th Cir. 2004), and *Ereth v. Cascade County,* 81 P.3d 463, 469 (Mont. 2003), *overruled by Labair v. Carey,* 291 P.3d 1160, ¶ 23 (Mont. 2012), is misplaced.

Unlike Washington, Montana law strongly protects civil claims made pursuant to violations of the Montana Constitution.  *Dorwart,* ¶ 48.  Washington, on the other hand, does not recognize the availability of such civil claims for money damages. *Reid v. Pierce Cty.*, 136 Wash.2d 195, 213, 961 P.2d 333, 343 (1998) (holding there is no civil action for violations of a person's constitutional right to privacy); *Blinka v. Washington State Bar Association*, 109 Wash.App. 575, 36 P.3d 1094 (2001) ("Washington courts have consistently rejected invitations to establish a cause of action for damages based upon constitutional violations 'without the aid of augmentative legislation.'").

Similarly, unlike *Ereth*, Plaintiffs claims here derive from fundamental constitutional rights.  Marble is not asserting a legal malpractice claim against his criminal trial counsel.  Instead, Marble seeks to vindicate his constitutionally protected rights via his civil claims against Defendants.  Montanans' fundamental constitutional rights are vigorously protected.  The rights included within Montana's declaration of rights are fundamental rights.  Without ample protection, such rights are "illusory:"

Constitutional rights that cannot be enforced are illusory. It is as *141 if those rights cease to exist as legal rights. Montanans' fundamental rights to a jury trial, to due process and to equal protection, among others, are rendered meaningless absent the courts being able to enforce these rights. Purely and simply, access to the courts guarantees that other Article II rights are something more than mere dreams and aspirations. Access to the courts gives real existence to other fundamental rights. And, that makes access to the courts a fundamental right also, for without this right other rights have no meaning.

*Kloss v. Edward D. Jones & Co.*, 2002 MT 129, ¶ 58, 310 Mont. 123, 140–41, 54 P.3d 1, 13, *on reh'g in part*, 2002 MT 129A, ¶ 58, 57 P.3d 41, concurrence of Justice James Nelson.

Law Enforcement Defendants' argument asks this Court to impose a catch-22 scenario, whereby a criminal defendant's constitutional claims would expire while serving time for standing conviction. Marble's causes of action per *Dorwart* seek compensation for violations of fundamental rights of liberty, equal protection under the law, and due process, among others. In order for Marble to prevail in his *Dorwart* claim that his liberty was unjustly taken from him, it is necessary that the underlying conviction be vacated and the charges against him be dismissed. After all, it is the conviction itself which grants the state the authority to remove liberty by imposing a sentence. § 46-18-201, MCA. While a conviction is in legal effect, a person's right to liberty has not been violated. § 46-18-201, MCA. Here, Judge McLean vacated Marble's conviction and ordered a new trial on January 3, 2017. Complaint, ¶ 110. The State of Montana, through Missoula County prosecutor Kristen Pabst, declined

to continue prosecuting the case and requested its dismissal.  Judge McLean granted dismissal on January 6, 2017.  See Complaint, ¶ 110.  Marble's Complaint against Defendants was filed within the applicable statute of limitations period, regardless of whether it was two or three years.

Montana's Supreme Court has long held fundamental constitutional rights in high regard.  To extinguish those rights because a convict did not file *Dorwart* claims while he was incarcerated, prior to the dismissal of the underlying action, would promote manifest injustice.  The Court should deny Defendants' motion to dismiss.

### C.     Marble's claims for negligence, NIED, and IIED were timely filed.

#### 1.     Marble's state law claims do not arise from legal malpractice accruing prior to the conviction.

Again, *Ereth* and its progeny pertain to the accrual date for legal malpractice claims.  Marble has asserted no such claims.  In addition to his § 1983 and *Dorwart* claims, Marble asserts that Defendants were negligent in their respective and collaborative participation in fabricating witness statements, violating their own policies, procedures, and orders, and commands under the Montana Constitution.  Complaint, ¶ 180. Marble also contends Defendants' negligently and/or intentionally inflicted emotional distress upon him by withholding and fabrication of evidence, intimidation/coercion of witnesses, and failure to investigate with competence and impartiality.  Complaint ¶¶ 187, 250.

This issue was specifically addressed in *Parish v. City of Elkhart*, 614 F.3d 677, 683 (7th Cir. 2010). In *Parish*, the plaintiff, "Parish," was convicted of attempted murder and served eight years of a 30 year sentence before the charges were dropped. *Parish*, 614 F.3d at 678. Plaintiff asserted § 1983 claims for violations of constitutional rights and for violations of rights under Indiana law, including IIED. *Parish*, 614 F.3d at 678. Specifically, Parish claimed "officers created a fake crime scene, fabricated evidence, tampered with evidence, destroyed or withheld exculpatory evidence, either actively suborned or deliberately turned a blind eye to perjured testimony, and testified falsely under oath, leading to his wrongful conviction. Parish also claims that the officers covered up their actions to maintain the continued incarceration of Parish." *Parish*, 614 F.3d at 683. The district court granted a motion to dismiss many of plaintiff's claims, including his IIED claim, ruling that the statute of limitations barred the claim. *Parish*, 614 F.3d at 679.

The court imposed a two-step analysis to determine when the statute begins. First, the Court determined whether the claim accrued prior to the conviction. Unlike a claim for illegal search or wrongful arrest, the Parish's claim did not accrue prior to the his conviction. The "conviction was an essential piece of this tort because it was the wrongful conviction that led to [plaintiff's] emotional strain." *Parish*, 614 F.3d at 683. Next, the court analyzed whether the IIED claim directly attacked the validity of the conviction. Because the bases for his claim directly attack the validity

of the conviction (i.e. officers fabricated evidence, destroyed or withheld exculpatory evidence, or turned a blind eye to perjured testimony), the court determined that plaintiff could not have brought the claim until "his conviction was disposed of in a manner favorable to him." *Parish*, 614 F.3d at 684.

This case mirrors the facts in *Parish*. Like *Parish*, Marble's claims stem from concerted and reprehensible investigating officer conduct, the litigation of which necessarily attacks the validity of the underlying conviction. Like *Parish*, the statute for these claims did not begin to run until the charges against him were dropped.

> **2.     Marble did not have notice of Missoula County's negligent conduct until admissions were made in Pabst's original motion to dismiss.**

Even if the three year limitation was not tied to the dismissal of the claims against Marble, he did not know nor should he reasonably have known that Defendants had engaged in conduct violating reasonable policies, procedures, and standard operating procedures such that a miscarriage of justice had occurred until it was admitted by the County in its Motion to Dismiss filed in April of 2016. Thus, his negligence claims were timely filed.

**VIII.     Alternatively, Marble moves for leave to amend his Complaint to cure its defects, if any.**

Alternatively, if Marble's Complaint requires more specific statements, he moves for leave to amend his Complaint. See *Lopez,* 203 F.3d at 1127, 1130; Rule

15(a), F.R.Civ.P. The proper procedure is not to dismiss Marble's claims with prejudice, but to grant leave to file an amended complaint. See *Gen-Probe, Inc. v. Amoco Corp. Inc.*, 926 F.Supp. 948, 961 (S.D. Cal. 1996). As discussed herein, the notice pleading standard of Rule 8(a) relies on "liberal discovery rules and summary judgment motions to define disputed facts and issues and dispose of unmeritorious claims." *Bell Atl. Corp.,* 550 U.S. at 585 (citations omitted). Discovery in this case has not yet begun. Reasonably, discovery will reveal evidence in further support of Marble's claims and will allow those claims to be decided on the merits. Alternatively, granting Marble leave to amend is appropriate.

## CONCLUSION

Marble's Complaint squarely puts Law Enforcement Defendants on notice of the claims being made against them. Marble's allegations intricately weave specific facts into long standing § 1983 claims. Law Enforcement Defendants engaged in a concerted effort to maliciously prosecute Marble through fabrication and suppression of evidence. Despite knowing they were prosecuting an innocent 17 year old boy, Law Enforcement Defendants did not intercede or conduct a reasonable investigation. Finally, dismissing Marble's state law claims, including negligence, at this stage in the litigation is unwarranted. With the exception of Marble's claims against Meeder and the § 1983 wrongful arrest allegations, Law Enforcement's motion should be denied.

DATED this 21st day of August, 2020.

ODEGAARD KOVACICH SNIPES, P.C.
and
GUSTAFSON LAW OFFICES

By:   /s/ Ross T. Johnson
      Ross T. Johnson
      P.O. Box 2325
      Great Falls, MT  59403
      Attorneys for Plaintiff

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), I certify that this brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double spaced; and the word count, calculated by WordPerfect X3, is 5,840 words, excluding caption, certificate of service, and certificate of compliance.

DATED this 21st day of August, 2020.

ODEGAARD KOVACICH SNIPES, P.C.
and
GUSTAFSON LAW OFFICES

By:   /s/ Ross T. Johnson
       Ross T. Johnson
       P.O. Box 2325
       Great Falls, MT  59403
       Attorneys for Plaintiff