IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CODY MARBLE,<br><br>                              Plaintiff,<br><br>vs.<br><br>MISSOULA COUNTY et al.,<br><br>                              Defendants. | CV 20–89–M–DLC<br><br><br><br>ORDER |

Before the Court is: (1) Defendants Dorothy Brownlow, Andrew Paul, and Jennifer Johnson's (collectively "Prosecuting Defendants") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 6); (2) Defendants Michael McMeekin, Brad Giffin, Jeremy Meeder, Michael Dominick, and Robert Taylor (collectively "Law Enforcement Defendants") Motion to Dismiss (Doc. 8.); and (3) Defendant Fred Van Valkenburg's Motion to Dismiss (Doc. 10). For the reasons explained, all motions are granted in part and denied in part.

**BACKGROUND[1]**

On January 3, 2017 District Judge McLean vacated Cody Marble's conviction for sexual assault of a minor and ordered the case for a new trial. (Doc.

---

[1] Solely for the purpose of resolving these motions, the allegations contained in Marble's Complaint are taken as true.

1 at 41.)  Three days later, he dismissed the entire case.  (*Id.*)  Marble was released having spent 13 years in prison for a crime he did not commit.  (*Id.* at 34, 42.)

The events leading to his conviction began in early March of 2002.  Marble was 17 at the time, and briefly detained in the juvenile wing of the Missoula County Detention Center.  (*See id.* at 3–4.)  On the evening of March 16, Scott Kruse, a juvenile detainee charged with murdering a homeless man, reported to an officer that a few nights prior he had witnessed Marble rape a 13-year old boy named Robert Thomas.  (*Id.*)  Kruse claimed that sometime between 9:00 and 9:45 p.m. he saw Marble and Thomas go into the shower changing area and "s[aw] everything" through a vanity wall.  (*Id.* at 9.)

Deputy Brad Giffin from the Missoula County Sheriff's Office was dispatched to investigate.  (*Id.* at 8.)  Following Kruse's report, four more boys came forward with knowledge of the rape.  (*Id.* at 4–11.)  Nicholas Melton-Roberts—who had earlier unsuccessfully sought Marble's help in framing another boy for sexual assault—claimed he saw Marble standing behind Thomas with Thomas' pants pulled down.  (*Id.* at 8.)  Russell Miller initially told Giffin that he saw Marble and Thomas engaged in oral sex, but when prompted by the deputy, changed his story and claimed to witness anal sex.  (*Id.* at 9.)  Gregory Van Mueller told Giffin that he observed Marble and Thomas leaving the shower area together and later learned about the rape.  (*Id.*)  Finally, Justin Morin claimed he

saw Marble hump Thomas through the vanity wall and claimed that Marble was red as he left the shower.  (*Id.* at 11.)  Morin also reported that Thomas had told him about the rape—an allegation which Thomas later denied.  (*Id.* at 11.)

When Giffin took Kruse's statement, Kruse admitted that he was in lockdown during the rape, but nevertheless claimed to see Thomas bent over with his hands on the floor.  (*Id.*)  The deputy did not question whether it was possible to view the shower area from Kruse's cell.  (*Id.* at 9–10.)

Giffin did not interview Marble or Thomas as both boys had been discharged from the facility two days prior—although Thomas eventually corroborated the boys' stories.  (*Id.* at 5.)  Nor did Giffin interview any of the four detention officers on duty the night of the alleged rape.  (*Id.* at 12.)

Meanwhile, Sergeant Dominick with the Sheriff's Office retrieved the security footage from the shower area.  (*Id.* at 6.)  When it did not support the boys' narrative of events, Dominick chalked it up to his lack of familiarity with the juvenile facility.  (*Id.*)  He then returned to the station to brief his captains about the investigation.  (*Id.* at 7.)

At roughly the same time, Deputy Taylor from the Sherriff's Office was getting Missoula County Deputy Attorney Jennifer Johnson up to speed on the investigation.  (*Id.*)  Taylor was acquainted with Marble from a run-in a few years prior.  (*Id.* at 15.)  In the midst of arresting Marble, the encounter turned hostile

when Taylor spat in Marble's face and kicked him to the ground, after which

Taylor was suspended and the pending charges against Marble were dropped.  (*Id.*

at 15–16.)  Because of this, Taylor felt motivated to make a sexual assault charge

stick—and was even overheard telling others that he planned to make Marble's life

"hell."  (*Id.* at 15, 18.)  To build his case, Taylor relied on Johnson to guide the

investigation, while deputy attorneys Andrew Paul and Dorothy Brownlow were

assigned to prosecute it.  (*Id.* at 7, 22.)

On March 17, the day after Kruse reported the rape, Dominick—

accompanied this this time by sheriff's deputy Jeremy Meeder—drove to Marble's

home.  (*Id.* at 3.)  The deputies arrested Marble without a warrant.  (*Id.*)  In

explanation for the arrest, Dominick told Marble's father that he had video proof

that Marble had raped another inmate.  (*Id.*)  The officers then escorted Marble to

the police station where he was questioned without an adult or attorney present.

(*Id.*)

As the investigation unfolded, significant holes remained.  For example, no

one bothered to interview the detention officers on duty that night—many of whom

were skeptical that a rape occurred.  (*Id.* at 17, 20.)  Reviewing the activity log,

Chief Detention Officer Scott Newman did not believe that the officer's random

walkthroughs left adequate time for any rape to have taken place.  (*Id.* at 16, 19.)

Others believed that if Marble and Thomas had entered the shower area after-hours someone would have seen it from the control room.  (*Id.* at 13, 16.)

Still others had caught wind that Marble was being set-up.  Detention Officer Gary Lancaster overheard Melton-Roberts confess that Marble was being framed and Officer Joanie Bigelow overheard Van Mueller tell two others that the rape never took place.  (*Id.* at 19–20.)  These officers believed that Kruse and Melton-Roberts had made up the rape hoping that their testimony against Marble would favorably impact their own pending charges.  (*Id.* at 20.)  In fact, after Kruse implicated Marble for rape, Deputy Attorney Brownlow reduced Kruse's homicide charge to misdemeanor assault which resulted in Kruse's release from custody. (*Id.* at 10.)

In November of 2002, Marble's case went to trial.  (*Id.* at 22.)  Kruse did not testify as he had fled the area after confessing to Brownlow that he did not, in fact, witness the rape.  (*Id.* at 23.)  Kruse's testimony was introduced by Brownlow who took the witness stand.  (*Id.*)  The prosecution also claimed to be unable to locate Justin Morin—whose inconsistent testimony was problematic for their case— although they should have been able to find him as he was housed at a juvenile facility in Boulder, Montana.  (*Id.* at 11.)  The prosecution's case relied entirely on the testimony of the boys, as there was no physical evidence to support a rape taking place.  (*See id.* at 19, 24, 26.)  Deputy Attorney Paul argued at closing that

even though Thomas' physical exam came back negative for sexual assault, this result, in fact, proved the rape occurred because Thomas must have a quickly-healing anus.  (*Id.* at 26.)  At the close of trial, the jury convicted Marble.  (*Id.* at 22.)  He was later sentenced to 20 years in prison, with 15 suspended.  (*Id.*)

In 2009, while on parole, Marble contacted the Montana Innocence Project because he had heard rumors that Thomas, who had subsequently been convicted for a sex crime himself, had been telling other inmates that Marble never raped him.  (*Id.* at 29–30.)  After conducting a thorough investigation, the Innocence Project agreed to take the case and obtained a letter from Thomas in which he wrote:

> I want to come out and let it be know[n].  I'm coming forward because I am in prison for a sex crime and know what it is like.  So I don't want him [Marble] to be charged with one when innocent.  When I was in [the detention center], I was [the] youngest & smallest and I was pressured into going along with it.

(*Id.* at 30–31.)  Thomas admitted that the other boys had bullied him into framing Marble in the expectation that all involved would receive lighter sentences in exchange for their testimony.  (*Id.* at 31–32.)

During the reinvestigation, Corrina Marry who had originally testified against Marble at trial also confessed to lying on the stand when she denied any knowledge that Van Mueller had recanted his story to her.  (*Id*. at 30–31.)  She

now maintains that in 2002, Van Mueller told her that Marble was set-up. (*Id.* at 31.)

Based on the witness recantations and evidence that it was impossible for Kruse to have seen the shower area from where he was in lockdown on the night of the alleged rape, the Innocence Project brought a petition for post-conviction relief. (*Id.* at 31.) While the petition was pending, County Attorney Fred Van Valkenburg, who was in charge of the County Attorney's Office during the Marble investigation and trial, interviewed Thomas and threatened to prosecute him for perjury if he continued to support Marble's case. (*Id.* at 32.) Thomas got cold feet, and in 2012, during a hearing on Marble's post-conviction petition, he stuck by his trial testimony and claimed his recantation was false. (*Id.*) Ultimately, the judge denied the petition. (*Id.*) While Marble's case was on appeal, Thomas committed suicide. (*Id.* at 33.)

Then, in 2015, the Montana Supreme Court reversed the denial of Marble's petition and sent it back for the district court to reconsider. (*Id.*) By this time, Kristin Pabst had replaced Van Valkenburg as the Missoula County Attorney, and she took a different view of the matter. In her motion to dismiss Marble's case, she wrote that his conviction "lacked integrity" and that "it was never too late to do the right thing."[2] (*Id.* at 33–34.) Van Valkenburg, who was no longer affiliated

---

[2] In a later filing, she wrote:

with the County Attorney's Office, joined the proceedings as an amicus curiae to argue against Pabst's motion.  (*Id.* at 34.)  On January 3, 2017, the judge vacated Marble's conviction.  (*Id.* at 41.)  Three days later, he granted the County's motion to dismiss the case.  (*Id.*)

## LEGAL STANDARD

Rule 12(b)(6) motions test the legal sufficiency of a pleading.  Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when

---

As the elected county attorney, [I am] called upon to make difficult decisions on a daily basis.  One of the hardest things for lawyers to do is admit when we've made a mistake.  No human system is perfect but, if we are truly committed to improving the criminal justice process, we must admit when we are wrong and commit to making sure that doesn't happen again . . . .  After conducting an exhaustive investigation and carefully examining all of the facts and evidence in this case, in light of my ethical obligation to do justice, I firmly stand by my decision that the charges against Cody Marble must be dropped.  It may not be popular, but it's the right thing to do.

(*Id.* at 38.)

the court can draw a "reasonable inference" from the facts that the defendant is liable for the misconduct alleged. *Id.* On a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Kneivel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Legal conclusions, on the other hand, are not entitled to the same presumption of truth. Dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

## DISCUSSION

Marble's Complaint[3] raises 14 claims arising under federal and state law against numerous individuals and various County entities for actions taken during the investigation and prosecution of his case. Prosecuting Defendants (Brownlow, Paul, and Johnson) and Van Valkenburg move to dismiss in full asserting immunity. Law Enforcement Defendants (McMeekin, Giffin, Meeder, Dominick

---

[3] When the Court refers to Marble's Complaint, it means the Second Amended Complaint & Jury Demand. (Doc. 3.)

and Taylor) move to dismiss Marble's claims in part.  The Court will address each motion separately.

## I.    Law Enforcement Defendants' Motion to Dismiss

Law Enforcement Defendants ("LE Defendants") argue that: (1) Marble's § 1983 false arrest claim is barred by the statute of limitations, or alternatively fails to state a claim against certain defendants; (2) Defendants McMeekin and Meeder should be dismissed from Marble's § 1983 malicious prosecution claim; (3) his § 1983 claim for wrongful conviction/incarceration should be dismissed as duplicative; (4) his § 1983 claim for reckless or intentional failure to investigate fails to state a claim; (5) all LE Defendants should be dismissed from Marble's § 1983 claim for destruction/suppression of exculpatory evidence; (6) Defendants McMeekin, Meeder, and Dominick should be dismissed from Marble's § 1983 claim for fabrication of evidence; (7) all LE Defendants should be dismissed from Marble's § 1983 claim for failure to intercede; and finally, (8) Marble's state law claims are time barred and LE Defendants should be released from those claims in their official capacities.

Marble defends his Complaint against most of the arguments raised by LE Defendants, and alternatively, asks that if the Court finds any deficiencies, he be permitted to amend his Complaint.  As the Court addresses each argument raised, it will specifically note those instances where Marble may amend.  Where the Court

does not indicate otherwise, it has concluded that any attempt to amend would be futile. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile").[4]

### A. False Arrest—§ 1983

LE Defendants argue that Marble's § 1983 false arrest claim is untimely under *Wallace v. Kato*, 549 U.S. 384, 387 (2007). (Doc. 9 at 17.)  The Court agrees.

The statute of limitations for a § 1983 claim is governed by relevant state law. *Id.*  In Montana, the period for claims premised on personal injury is three years. *See Jacobsen v. State*, 996 P.2d 884, *4 (Mont. 1999) (unpublished). However, the question of when a claim accrues "is a question of federal law that is not resolved by reference to state law." *Id.* at 388.  A claim accrues, and Montana's three-year window begins, when the plaintiff has "a complete and present cause of action." *Id.* at 388 (citing *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997) (internal quotation marks omitted)).  In *Wallace*, the Supreme Court held that "[r]eflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends [and a claim accrues] once the victim becomes

---

[4] The same will be true for Prosecuting Defendants' and Van Valkenburg's motions to dismiss.

held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges." *Id.* at 389 (emphasis in original).

Here, Marble alleges that Defendants Dominick and Meeder arrested him at his home without a warrant giving rise to a viable false arrest claim. (Doc. 3 at 44). However, once Marble was charged, the three-year time clock on this claim began, making his January 2019 complaint untimely. Marble does not argue otherwise. This claim is dismissed.

### B. Malicious Prosecution—§ 1983

LE Defendants argue that Defendants Sheriff McMeekin and Deputy Meeder should be dismissed from this claim. (Doc. 9 at 21.) As a preliminary matter, Marble does not contest dismissal of Defendant Meeder. Accordingly, the Court will dismiss Meeder and focus its attention on McMeekin.

LE Defendants claim that Marble does not implicate McMeekin in any unlawful aspect of the investigation because (according to the Complaint) all he did was "believe[] the juvenile detainees' and victim's statements rather than the juvenile detention officers' statements" which does not demonstrate that he "wrongfully caused charges to be filed." (Doc. 9 at 21 (citing *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004).)

Under federal law, a claim for malicious prosecution requires the plaintiff to show "that the defendants prosecuted [him] with malice and without probable

cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right."  *Id.* (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995) (alterations in original)).  "Malicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed." *Id.* (citing *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126–27 (9th Cir. 2002)).

Marble contends that LE Defendants read his Complaint against McMeekin too narrowly.  He argues that McMeekin knew that the witness statements contradicted one another and that the juvenile detention officers believed the rape was not possible, yet he permitted Marble's prosecution under his watch.  (Doc. 22 at 14–15.)  Moreover, as Sherriff, Marble asserts that McMeekin acted through his deputies and is responsible under a theory of supervisory liability.  (*Id.* (citing *Wilson v. Maricopa Cty.*, 463 F. Supp. 2d 987, 995 (D. Ariz. 2006)).)

The problem is that Marble did not raise any supervisory liability theory in his Complaint nor did he assert that Sherriff McMeekin acted in concert with the other deputies in his malicious prosecution allegations.  The mere fact that Sherriff McMeekin believed in the State's theory of the case in light of conflicting evidence does not satisfy the causal requirement for a malicious prosecution claim because

the Complaint fails to allege that McMeekin was responsible for instigating a malicious prosecution against Marble.  *Awabdy*, 368 F.3d at 1066.

The Court will dismiss McMeekin from this claim as currently alleged, however, Marble will be permitted to amend this claim as to McMeekin only, as the facts raised against dismissal would, if alleged in the Complaint, survive a motion to dismiss.

### C. Wrongful Conviction/Incarceration—§ 1983

LE Defendants next allege that Marble's claim for wrongful conviction/incarceration should be dismissed as duplicative of his malicious prosecution claim.  (Doc. 9 at 24.)

Stemming from its inherent power to manage its docket, a district court has discretion to dismiss any duplicative claim.  *M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082, 1086 (9th Cir. 2012).  LE Defendants assert that the Court should exercise that discretion here as the claims for malicious prosecution and wrongful conviction are substantively the same, and if anything, the claim for wrongful conviction is narrower as "Marble ties it directly to alleged failures to conduct an adequate investigation[.]"  (Doc. 9 at 24.)  In response, Marble asserts only that these claims are commonly pled together.  (Doc. 22 at 21.)  The customary pleading practices of a plaintiff's attorney is not a sufficient reason for the Court to retain a redundant count.  This claim is dismissed.

**D. Reckless or Intentional Failure to Investigation—§ 1983**

LE Defendants assert that the Ninth Circuit does not recognize any

constitutional right to an adequate police investigation.  (Doc. 9 at 25 (citing

*Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) (per curiam); *Hageman v.*

*Bates*, No. CV-06-09 MDWM, 2007 WL 927584, at *8 (D. Mont. Mar. 23, 2007)

findings and recommendation adopted by, *id.* at *1).)  Marble argues that the cases

cited by LE Defendants are distinguishable: *Gomez* held only that a *victim* had no

right to an investigation of a potential suspect and *Hageman* found no right to an

investigation related to personal property.  (Doc. 22 at 22–23.)  Marble argues that

the due process clause of the Fourteenth Amendment provides a constitutional

right to an adequate police investigation when an individual's liberty interests are

at stake.  (*See id.* at 23.)

While neither *Gomez* nor *Hagman* is on all fours, the Court can find no

indication that the Ninth Circuit has recognized *anyone's* claim to an adequate

police investigation—whether that person is the suspect, victim, or family member

of either.  In *Gomez*, the plaintiffs, family members of a young boy killed in an

accident while trespassing on a construction site, brought a § 1983 claim alleging

that the police failed to adequately investigate their son's death.  757 F.2d at 1005.

The Ninth Circuit found no viable claim, concluding that a "prerequisite to

recovery under . . . § 1983, is that the plaintiff prove that the defendants deprived

him of a right secured by the Constitution[.]"  *Id.* at 1005–06.  Speaking in broad

language, the court explained that there is no "due process right to have a full and

fair police investigation into violence done [to the plaintiffs] or their children."  *Id.*

at 1006.  "We can find no instance where the courts have recognized inadequate

investigation as sufficient to state a civil rights claim unless there was another

recognized constitutional right involved[,]" such as discriminatory policing.  *Id.*

This Court relied on *Gomez* in similarly rejecting a § 1983 claim brought by

the family members of a man killed by a fatal gunshot wound to the head.

*Hageman*, 2007 WL 927584, at *3.  In *Hageman*, the plaintiffs claimed that law

enforcement officers failed to investigation the circumstances surrounding the

shooting when they concluded that the victim took his own life.  *Id.* at *7.

Although other allegations in the case involved missing personal property, Marble

is incorrect that the failure to investigate allegation was tethered to that concern.

And, although the plaintiffs there were the immediate family members of the

deceased—as in *Gomez*, the Court did not hinge its conclusion on those

relationships.  It wrote:

> Federal law clearly establishes there is no viable legal claim under 42
> U.S.C. § 1983 for a law enforcement officer's inadequate investigation
> of an alleged crime. State officials have no duty under federal law to
> victims of crimes, or to families of crime victims, to conduct a criminal
> investigation in the manner demanded by the victim or the families,
> even if law enforcement officers' conduct is not in compliance with
> governing policies and procedures.  Police officers have no affirmative
> duty to a plaintiff to investigate a crime in a particular way. Law

enforcement officers' failure to investigate a crime does not rise to the
level of a violation of any constitutional right.

*Id.* at *7 (internal citations omitted).

Although Marble undoubtedly has a fundamental right to be free from
wrongful conviction, that is the right covered by his malicious prosecution claim.
Moreover, "[w]here a particular Amendment 'provides an explicit textual source of
constitutional protection' against a particular sort of government behavior, 'that
Amendment', not the more generalized notion of 'substantive due process,' must
be the guide for analyzing these claims." *Awabdy*, 368 F.3d at 1069 (quoting
*Graham v. Connor*, 490 U.S. 386, 395 (1989)).  As the Court can find no Ninth
Circuit recognition of the right needed to state an independent Fourteenth
Amendment claim, the Court will dismiss this count.  However, it will allow
Marble to amend to the extent he wishes to seek damages for discriminatory denial
of police services.  *Estate of Macias v. Ihde*, 219 F.3d 1018, 1028 (9th Cir. 2000);
*Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Marble's Complaint
already lays the groundwork for such a claim by alleging that Deputy Taylor and
others at the department denied him a fair investigation because they disliked him.

### E. Destruction/Suppression of Exculpatory Evidence—§ 1983

LE Defendants seek to be dismissed from Marble's destruction/suppression
of evidence claim because it is "precisely the type of 'unadorned, the defendant-
unlawfully-harmed-me accusation' that *Iqbal* prohibits."  (Doc. 9 at 27 (citing

*Iqbal*, 556 U.S. at 678).)  In defense, Marble largely restates the same vague allegations to which LE Defendants object, asserting, for example, that the deputies "created false evidence by ignoring obviously exculpatory evidence" and conducted a "results oriented investigation."  (Doc. 22 at 17–18.)  These types of allegations fail *Iqbal*'s specificity requirements.  The only specific instance of destruction or suppression concerning law enforcement is Marble's claim that deputies created false evidence by correcting witness statements and inducing witnesses to lie.  These allegations support Marble's claim for fabrication of evidence not destruction/suppression.  Having scoured the Complaint and finding no specific instance of any LE Defendant destroying or suppressing evidence in the investigation of Marble, LE Defendants are dismissed from this claim.  If discovery yields evidence that would support Marble's theory, he may be granted leave to amend upon appropriate motion.[5]

---

[5] When the Court enters its scheduling order in this case, it will provide the parties with a deadline for amending the pleadings without leave of court.  The Court will allow Marble to amend his Complaint on Counts II, IV and VI consistent with this Order so long as he does so by this deadline.  However, this deadline will occur well in advance of the close of discovery. Because this particular claim of Marble's requires further factual development which may not be available to him prior to that deadline, Marble may bring a motion pursuant to Federal Rule 15(a)(2) if he discovers facts which support amendment. The same is true of Count VII.

**F.  Fabrication of Evidence—§ 1983**

LE Defendants seek to dismiss Sheriff McMeekin, Deputy Meeder, and Sergeant Dominick from Marble's fabrication of evidence claim.  (Doc. 9 at 30.) Marble does not oppose dismissal of Meeder.  Therefore, Meeder is dismissed.

In defense of McMeekin, Marble raises the same observations he made in response to his malicious prosecution claim—that as the individual in charge, McMeekin is charged with knowledge and acquiescence in the actions of his deputies.  (*See* Doc. 22 at 15–16.)  While this is certainly plausible, Marble's Complaint does not raise these allegations and so McMeekin will be dismissed.  As with his malicious prosecution claim, Marble is permitted to amend his Complaint to correct this deficiency.

As for Dominick, Marble contends that he reviewed the surveillance footage and failed to familiarize himself with the area.  (*Id.* at 16.)  But it is not clear how ignoring the significance of evidence favorable to Marble is fabricating condemning evidence.  In short, Marble raises no allegation that Dominick manipulated or created anything out of thin air in order to implicate Marble in the sexual assault.  Dominick is dismissed.

**G. Failure to Intercede—§ 1983**

LE Defendants seek to be dismissed from this claim, arguing that Marble has not alleged a sufficient factual basis to support their inclusion.  (Doc. 9 at 31.)

Marble points to only one specific example: he argues that Defendant Giffin who initially took witness statements and prompted the witnesses to ensure the consistency of their statements should have been aware that his conduct was unlawful and could have interceded at any other time.  (Doc. 22 at 20.)  More broadly, Marble asserts that all of the LE Defendants worked the case together and "it is reasonably anticipated that further evidence will come to light through discovery that they were keenly aware of each other's actions."  (*Id.*)

The question at this juncture is whether the Complaint itself is adequate. Marble's arguments that discovery may reveal further supportive evidence only speaks to whether amendment is proper.

"Police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen."  *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), *rev'd in part on other grounds*, 518 U.S. 81 (1996).  "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede."  *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000).

Here, Marble asserts only that Giffin had an opportunity to intercede in his own unlawful interviews.  Arguing that Giffin failed to intervene in Giffin's own act does not provide a factual basis for this claim.  LE Defendants will be dismissed from this claim, however, for the reasons Marble indicates, he may be

permitted to amend this Complaint upon appropriate motion if discovery supports this theory.

### H. State Law Claims

LE Defendants seek to be dismissed from Marble's state law claims as redundant. (Doc. 9 at 33.)

A suit against a municipal actor in her official capacity is equivalent to a suit against the entity. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). When both are named, a court has discretion to dismiss the officer in her official capacity as redundant. *Ctr. For Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008).

Here, Marble lists both the Missoula County Sherriff's Office as well as each individual officer in his official capacity. To avoid redundancy, the Court dismisses the LE Defendants from Marble's state law claims.

## II.   Prosecuting Attorneys' Motion to Dismiss

Prosecuting Defendants argue that all claims against them should be dismissed because: (1) they are entitled to absolute prosecutorial immunity on all claims; (2) Johnson is entitled to qualified immunity for claims related to providing investigation advice; (3) each of Marble's state law claims are barred by the statute of limitations; (4) Marble's claim for failure to disclose exculpatory evidence should be dismissed under Rule 12(b)(6) for failure to state a claim; (5) Marble's

Complaint relies on impermissible group pleading; and (6) all other claims should

be dismissed for failure to demonstrate personal involvement.

### A. Absolute Prosecutorial Immunity

Prosecuting Defendants assert that prosecutorial immunity shields them

from each of Marble's federal and state law claims.  (Doc. 6 at 3.)  Federal

prosecutorial immunity applies to Marble's § 1983 claims, whereas state

immunities apply to state law claims.  *Imbler v. Pachtman*, 424 U.S. 409, 418–24

(1976) (recognizing prosecutorial immunity as grounded in 42 U.S.C. § 1983

despite no textual recognition of such in the statute); *e.g.*, *Boruchowitz v. Bettinger*,

654 F. App'x 354, 355 (9th Cir. 2016) (unpublished) (analyzing Nevada law to

determine whether state prosecutors were immune from state law claims).

Nevertheless, it appears Montana law draws no distinction between the source of

the immunity, *see Renenger v. State*, 426 P.3d 559, 563–67 (Mont. 2018), and

treats the two as "coextensive," *Bros. v. Monaco*, 363 F. Supp. 3d 1138, 1145 (D.

Mont. 2019).  The Court will therefore draw no distinction in its analysis.

Prosecutorial immunity insulates prosecutors for all actions taken within the

scope of their duties in pursuing a criminal prosecution.  *Imbler*, 424 U.S. at 410.

"[T]he absolute immunity that protects the prosecutor's role as an advocate is not

grounded in any special 'esteem for those who perform these functions, and

certainly not from a desire to shield abuses of office, but because any lesser degree

of immunity could impair the judicial process itself.'" *Kalina v. Fletcher*, 522 U.S.

118, 127 (1997) (quoting *Malley v. Briggs*, 475 U.S. 335, 342 (1986)).  Instead, it

"protects the prosecutor from harassing litigation that would divert his time and

attention from his official duties and to enable[e] him to exercise independent

judgment when deciding which suits to bring and in conducting them in

court." *Torres v. Goddard*, 793 F.3d 1046, 1051 (9th Cir. 2015) (quoting

*Kalina*, 522 U.S. at 125 (1997) (internal quotation marks omitted)).

In determining whether absolute immunity applies in a given situation,

courts take a "functional approach," looking past the identity of the actor and

instead examining the "nature of the function performed" and whether it falls

within the scope of acts "intimately associated with the judicial phase of the

criminal process." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269–70 (1993).  In

*Imbler*, the leading case on point, the Supreme Court held that absolute immunity

covers the "initiation and pursuit of a criminal prosecution, including presentation

of the state's case at trial." *Id.* (citing *Imbler*, 424 U.S. at 421).  On the other hand,

acts taken in investigating, offering legal advice to the police, or acts of an

administrative nature are not entitled to absolute immunity.  *Id.*

As an initial matter, Johnson is not entitled to absolute immunity.  Marble

alleges that Johnson oversaw the police investigation which is an act for which a

prosecutor enjoys only qualified immunity.  Barlow and Paul, however, are a

different story.  Marble alleges: (1) both prosecutors pursued the case against him

despite thin evidence (*id.* at 23); (2) they both hid Kruse to prevent him from

testifying at trial because his subsequent statement that he never witnessed the rape

hurt the State's case (*id*. at 22–23); (3) Brownlow inappropriately took the witness

stand and testified against him at trial even though she was prosecuting his case

(*id.* at 23); (4) both prosecutors discredited credible defense witnesses at trial (*id.* at

24–25); (5) they suppressed evidence and lied to discredit evidence favorable to

Marble (*id.* at 25); (6) Brownlow was motivated by a personal dislike of Marble

(*id.* at 25–26); (7) Paul made an inappropriate closing argument suggesting that

Thomas' anus healed quickly when no evidence supported this theory (*id.* at 26);

and (8) their general ineptitude is emblematic of the systemic failures at the County

Attorney's Office to properly handle sexual assault cases (*id.* at 26–27).

Marble argues that Brownlow and Paul are only entitled to qualified

immunity—generally asserting that their pre-charged conduct involved oversight

of the investigation.  (Doc. 25 at 13–15.)  However, the Complaint never

specifically alleges that Brownlow or Paul involved themselves in the

investigation.  Their pre-charge conduct—to the extent it is described at all—is

limited to the decision to pursue charges despite thin evidence.  The decision to

pursue a case falls within the heart of their absolute immunity.  *See Torres*, 793

F.3d at 1051.

Marble next argues that Brownlow and Paul's post-charge conduct falls outside of their roles as advocates for the State.  (Doc. 25 at 18–19.)  Although not explicitly stated as such, Marble seems to argue that any questionable behavior— whether unconstitutional, unethical, or simply not customary (such as a prosecutor taking the witness stand at their own trial)—falls outside their role as an advocate. This is simply not true.  Taking Marble's allegations at face value, it appears Brownlow and Paul engaged in a series of shenanigans designed to prevent Marble from obtaining a fair trial.  If anything, these acts demonstrate that Brownlow and Paul overstepped ethical and legal boundaries by being too zealous of advocates for the State.  Nevertheless, each act alleged is "intimately associated with the judicial phase of the criminal process," *Imbler*, 424 U.S. at 430, because it occurred in preparation for, or during, trial.  Defendants Brownlow and Paul are dismissed from this case as protected by prosecutorial immunity.

## B.  Qualified Immunity—§ 1983 claims

Marble alleges only one fact against County Attorney Johnson.  He asserts she provided investigation advice and oversight to the law enforcement officers pursuing Marble's case.  This is not an act for which Johnson receives absolute prosecutorial immunity.  *Buckley*, 509 U.S. at 276–77.  Nevertheless, Johnson argues any claim against her is barred by the doctrine of qualified immunity.  (Doc. 7 at 22.)

Qualified immunity provides a defense to a § 1983 claim when the accused official reasonably believes her conduct to be lawful.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 813–19 (1982).  It protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Once raised, qualified immunity shields the official unless the plaintiff can show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

Marble asserts that qualified immunity is not applicable here because it is reasonable to infer, based on law enforcements' actions, that Johnson advised them not to interview the detention officers and told them how to tailor the investigation to implicate him.  (Doc. 25 at 14.)  He argues that Johnson participated in a "malicious scheme to ensure Marble was convicted of a crime he did not commit." (*Id.* at 16.)  Additionally, he argues that Johnson's participation in suppression of evidence violates the Fourteenth Amendment.  (*Id.*)

Although Marble may believe that conducting a "malicious scheme" to "wrongfully convict" a suspect is a violation of a "clearly established constitutional right," he does not name the right at issue.  Courts are repeatedly instructed not to define the right at issue "at a high level of generality."  *Id.* at 741.  "The dispositive question is 'whether the violative nature of *particular* conduct is clearly

established.'"  *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting

*al-Kidd*, 562 U.S. at 741) (emphasis in original).  Moreover, once qualified

immunity is raised as a defense, the plaintiff bears the burden to show the official

violated a "clearly established" federal right.  *Sweaney v. Ada County,* 119 F.3d

1385, 1388 (9th Cir. 1997).  Only then does the burden shift back to the defendant

to demonstrate her conduct was reasonable.  *Houghton v. South,* 965 F.2d 1532,

1534 (9th Cir. 1992).

By failing to name the right at issue and arguing only that generalized

wrongful conduct violated an unidentified provision of the constitution, Marble

does not meet his burden to show which "clearly established" right Johnson

violated when she advised and oversaw the investigation of his case.

As for his argument that Johnson additionally violated his Fourteenth

Amendment rights by suppressing evidence, Marble's Complaint does not allege

that Johnson played any role in his prosecution.  This is an argument he raises only

in defense of this motion.  As such, Johnson is entitled to qualified immunity

against each of Marble's § 1983 claims.

## C. Statute of Limitations—State law claims

Having concluded that Brownlow and Paul should be dismissed from the

case and that Johnson is entitled to qualified immunity against Marble's § 1983

claims, the Court must now address the remaining arguments related to the state

law claims.  Prosecuting Defendants first argue that all state law claims are time barred.

Prosecuting Defendants contend that all of the state law claims allege personal injury for which Montana provides a three-year statute of limitations.  The jury returned its verdict on November 22, 2002 but Marble's initial complaint was not filed until January 3, 2019.  In Montana, the statutory period begins when "all elements of the claim or cause exist or have occurred."  Mont. Code Ann. § 27–2–102.  Prosecuting Defendants assert that all of Marble's state law claims accrued when the jury returned its verdict 15 to 16 years before the suit was filed.  (Doc. 7 at 32.)  This is not universally true.

### i.     Malicious Prosecution

Marble argues that his malicious prosecution claim is timely because it did not accrue until he was granted post-conviction relief.  (Doc. 25 at 26.)  This is correct.  In *Rouse v. Anaconda-Deer Lodge County*, the Montana Supreme Court held that a claim for malicious prosecution does not accrue until a plaintiff is acquitted of the crime for which he was maliciously prosecuted.  817 P.2d 690, 694 (Mont. 1991) *overruled on other grounds by Stratemeyer v. Lincoln Cty*., 276 Mont. 67, 74 (1996).  Accordingly, Marble's malicious prosecution claim survives.

### ii.    False Arrest

Similarly, Marble cites *Rouse* to support his assertion that his false arrest claim is timely.  (Doc. 25 at 26.)  In Montana, a claim for false arrest requires: (1) the restraint of an individual against her will; and (2) the unlawfulness of the restraint.  *Hughes v. Pullman*, 36 P.3d 339, 343 (Mont. 2001).  Presumably, Marble means to argue that until a court determines that such restraint is not lawful, i.e. a conviction results in acquittal, a claim has not accrued.  Prosecuting Defendants offer no argument in response.  Nevertheless, the *Wallace* decision, which serves as an analogue here, expressly forecloses this notion.  549 U.S. at 389.  *Wallace* held that a claim for false imprisonment accrues when an individual is held pursuant to the legal process—"when he is bound over by a magistrate or arraigned on charges."  *Id.*  This claim accrued long before Marble filed his January 2019 complaint.

### iii.    Dowart claim

Marble argues that his *Dowart* claim (raising violations of fundamental rights of liberty, equal protection, and due process under Montana's constitution) did not accrue until he was released from prison because in order to show that his "liberty was unjustly taken from him, it is necessary that the underlying conviction be vacated and the charges against him dismissed."  (Doc. 25 at 28.)  This

argument is reasonable and Johnson offers nothing in rebuttal.  Marble's *Dowart* claim will advance as to Johnson.

### iv.    Negligence, NIED, & IIED

Marble next argues that the Court should follow the Seventh Circuit's lead in *Parish v. City of Elkhart*, in determining that a claim for Intentional Infliction of Emotional Distress ("IIED")—and by extension Negligence and Negligence Infliction of Emotional Distress ("NIED")—in the context of a wrongful conviction does not accrue until the conviction is set aside.  614 F.3d 677, 683 (7th Cir. 2010).  In *Parish*, the court determined that the accrual date for an IIED claim premised on a wrongful conviction occurs upon acquittal.  *Id.* at 683–84.  The court reasoned that determining whether a defendant's actions are "extreme and outrageous" requires it to consider whether, for example, an officer "committed perjury, falsified evidence, coerced witnesses to commit perjury, [or] withheld exculpatory evidence" all of which inherently challenge the validity of the underlying conviction.  *Id.* at 683.  Consistent with the Supreme Court's analysis of a malicious prosecution claim for wrongful conviction, the court determined that it is not proper to challenge the validity of a conviction through any mechanism other than a writ of habeas corpus.  *Id.* (citing *Heck v. Humphrey*, 512 U.S. 477, 482 (1994)).  Therefore, the court concluded that a valid IIED claim for wrongful conviction is only permissible after a court sets a conviction aside.  *Id.* at 684.

Again, Prosecuting Defendants offer no argument in rebuttal.  Finding the Seventh Circuit's reasoning persuasive, the Court will permit the claims for Negligence, NIED, and IIED to advance as to Defendant Johnson.

## D. Impermissible Group Pleading

Defendants argue the Court should throw away Marble's Complaint for relying on impermissible group pleading.  (Doc. 7 at 33.)  This is an argument echoed by LE Defendants, yet all Defendants have thus far been able to effectively argue why allegations and conduct particular to them warrant dismissal.  The Court finds no deficiency in the Complaint on this basis.

## E. Dismissal for Factual Insufficiency

Finally, Prosecuting Defendants argue that Marble has failed to demonstrate the personal involvement necessary to state a claim under each count.  (Doc. 7 at 34.)  Yet beyond stating, for example, that "Marble fails to plausibly allege the personal involvement of Johnson in malicious prosecution," Prosecuting Defendants offer no further argument or citation.  It is not the job of the Court to develop a party's arguments on their behalf.  *See Stuard v. Stewart*, 401 F.3d 1064, 1067 (9th Cir. 2005).  Using the malicious prosecution example, Prosecuting Defendants entirely fail to explain: (1) what Marble needed to show; and (2) specifically how the facts he alleged failed that showing.  Although the facts alleged against Johnson are thin—and there are arguably arguments left on the

table that would warrant her dismissal from these counts—these claims shall
survive, at least until summary judgment.

### III.   Van Valkenburg's Motion to Dismiss

Former Missoula County Attorney Fred Van Valkenburg moves to dismiss
all claims raised against him.  (Doc. 10.)

### A. Absolute Prosecutorial Immunity

As Van Valkenburg points out, Marble does not allege many facts that
support his participation in Marble's wrongful conviction.  The Complaint alleges
that Van Valkenburg: (1) was the supervisor of the County Attorney's Office
during Marble's investigation, trial, and initial post-conviction proceedings and
failed to prevent his employees from committing ethical violations (Doc. 3 at 4,
24–29); (2) he threatened to pursue a perjury charge against Thomas if Thomas
continued to support Marble's 2010 petition for post-conviction relief (*id.* at 32–
33); and (3) he joined Marble's 2017 remand post-conviction proceedings as an
amicus curiae (because he was no longer affiliated with the County Attorney's
Office) to oppose the position taken by that Office (*id.* at 33–39).  Van Valkenburg
argues that absolute prosecutorial immunity covers each of these acts.  (Doc. 11 at
15–19.)

Marble's first allegation—that Van Valkenburg supervised all attorneys in
this case—is easily resolved.  Even assuming Van Valkenburg may be held

accountable for Brownlow and Paul's actions under a theory of supervisory liability, absolute prosecutorial immunity shields him from liability for supervising these attorneys in their prosecution of a criminal case against Marble. The second two allegations present a more challenging case.

Marble first argues that absolute immunity does not protect Van Valkenburg's 2010 interview with Thomas because interviewing a witness in order to fabricate testimony is an investigative function for which a prosecutor enjoys only qualified immunity. (Doc. 23 at 6.)

The Ninth Circuit recognizes that not all of a prosecutor's witness interviews are entitled to absolute immunity. *Genzler v. Longanbach*, 410 F.3d 630 (9th Cir. 2005). In *Genzler*, the court parsed the difference between a witness interview conducted for the purpose of trial preparation—for which a prosecutor is absolutely immune, and a witness interview that occurs either early in the investigation or is otherwise one that would ordinarily be conducted by police—for which a prosecutor enjoys only qualified immunity. *Id.* at 637–38.

The relevant facts are thus: Genzler was a charged with homicide after he fatally stabbed an acquittance (Harless) outside a bar. *Id.* at 634. After the stabbing, police interviewed the victim's fiancé (Flanders) who witnessed the altercation. *Id.* Flanders initially told officers that Harless crossed the street to where she was standing outside of Genzler's car, knocked on Genzler's window,

and when Genzler got out, the two of them threw punches. *Id.* According to

Flanders, Harless then flipped Genzler to the ground which is when Genzler

stabbed him. *Id.* Flanders also told officers that Harless was a skilled wrestler and

street fighter. *Id.*

Shortly after speaking with officers, Flanders met with the Deputy District

Attorney Longanbach. *Id.* Longanbach told her that in order to convict Genzler,

she needed to lie about what she saw the night of the stabbing and lie about

Harless' violent past. *Id.* at 635. After this meeting, Flanders abruptly changed

her testimony and testified at trial that she remembered little of the fight, and that

she though she saw someone pull Genzler off Harless after the stabbing. *Id.* at

634. She was evasive on the stand and did not acknowledge Harless' history of

street fighting. *Id.*

In reviewing the applicable law, the Ninth Circuit recognized notable limits

on a prosecutor's immunity. For example, there is no immunity for prosecutors

who fabricate evidence "'during the early stage of the investigation' when 'police

officers and assistant prosecutors [are] performing essentially the same

investigatory functions.'" *Id.* at 637 (quoting *Buckley*, 509 U.S. at 273). Nor does

a prosecutor enjoy absolute immunity before she has probable cause to arrest or

charge an individual—as she cannot be said to be an "advocate" at this time. *Id.*

(citing *Buckley*, 509 U.S. at 274). But timing alone is not dispositive; even after a

probable cause determination a prosecutor may still engage in "'police investigative work' that is entitled to only qualified immunity." *Id.* at 638 (quoting *Buckley*, 509 U.S. at 273.)  Instead, when a prosecutor interviews a witness, the immunity question hinges on the type of interview being conducted.  *Id.*  An interview done to evaluate evidence and prepare a witness for trial is conduct for which a prosecutor is absolutely immune, whereas an investigation "of the type normally done by police" entitles the prosecutor only to qualified immunity.  *Id.*

The court then determined that Longanbach's interview with Flanders which occurred very early in the investigation only days after the fatal stabbing took place, was an interview that would ordinarily be conducted by police because his primary purpose was information gathering.  *Id.* at 642–43.

Admittedly, asking whether the type of interview in a given situation is one that would normally be conducted by the police, does not present a bright line rule that lends itself to consistent and predictable application.  Here, however, the task is not so thorny.  Marble's Complaint alleges that Van Valkenburg interviewed Thomas in preparation for a hearing on Marble's post-conviction proceeding. Even though Marble alleges that Van Valkenburg threatened Thomas into lying to avoid a perjury charge, the immunity question does not hinge on allegations of bad conduct.  Given that this interview occurred years after the State had obtained a conviction against Marble and that post-conviction proceedings do not usually

involve any type of police investigation, it is clear that Van Valkenburg was not performing the type of work that would ordinarily fall to the police. Prosecutorial immunity shields Van Valkenburg from liability for this act.

Finally, Marble argues that Van Valkenburg is not entitled to prosecutorial immunity for his action in opposing the State's motion to dismiss the charges against Marble in 2017 after Van Valkenburg had left the County Attorney's Office. (Doc. 23 at 7.) Van Valkenburg asserts that he is entitled to absolute immunity because he "was acting at all times as an advocate for the County" and the law provides prosecutors protection during post-conviction proceedings. (Doc. 11 at 18.)

Although the Court has repeatedly clarified that the nature of prosecutorial immunity does not hinge on the status of the actor but on the particular function performed, *Buckley*, 509 U.S. at 269–70, this does not mean that the status of the actor is irrelevant. Prosecutorial immunity is immunity provided to prosecutors— not former prosecutors. When Van Valkenburg requested leave to join Marble's 2017 post-conviction proceedings as an amicus curiae he no longer had any affiliation with the County Attorney's Office. Nor can it be said that he acted as an "advocate for the State" when he was taking an adversarial stance to that of the County. Van Valkenburg makes much of the fact that the district court granted his permission to join as an amicus—but this does not mean that he was acting in any

state-sanctioned official capacity.  Individuals who voluntarily inject themselves into a judicial process are not entitled to prosecutorial immunity *because they are not prosecutors* and there is no valid public policy good served by protecting them from the consequences of their wrongful actions.  *See Torres*, 793 F.3d at 1051. Van Valkenburg is not immune from suit for his participation in those proceedings.

### B. Dismissal for Lack of Factual Development

#### i.     Destruction, Suppression, & Fabrication of Evidence

Additionally, Van Valkenburg asserts that Marble does not allege a factual basis for his inclusion in Counts V or VI—claims for destruction, suppression, and fabrication of evidence.  (Doc. 11 at 20.)  Van Valkenburg notes that most of the conduct that would support these claims occurred during the lead up to Marble's trial in 2002—for which Van Valkenburg is either immune or is not alleged to have played any role.  (Doc. 11 at 20–21.)  The only other fact that could arguably support such claims is his witness interview with Thomas in 2012—and the Court has already determined that Van Valkenburg has immunity for this act.  The Court agrees and will dismiss Van Valkenburg from these claims.

#### ii.     Failure to Intercede

Van Valkenburg seeks dismissal from Count VII, arguing that there is no factual basis to support this allegation.  (Doc. 11 at 22.)  The Court agrees, although not for the reasons Van Valkenburg advances.

The Court has already concluded that Van Valkenburg can only be held accountable for his participation in the 2017 post-conviction proceedings. Officers have a duty to intercede when they (1) know a fellow officer is violating another's constitutional rights; and (2) they have an opportunity to do so. *Koon*, 34 F.3d at 1447 n.25; *Cunningham*, 229 F.3d at 1289. In 2017, Van Valkenburg was not a state actor or other official. For this reason, Marble's claim against Van Valkenburg fails.

### C. State Law Claims

Van Valkenburg asserts that he should be dismissed from Marble's state law claims in his official capacity as redundant because the Missoula County Attorney's Office has already been named. (Doc. 11 at 24.) Alternatively, he asserts he is statutorily immune from these claims under Montana Code Annotated § 2-9-305. (*Id.* at 25.) Finally, he argues that all state law claims are time barred. (*Id.* at 25–27.)

Consistent with its conclusions above, some but not all of Marble's state law claims are time barred. *Supra*, II.C. Second, Van Valkenburg is incorrect that he enjoys statutory immunity for his actions in the 2017 post-conviction proceedings. Section 2-9-305(2) only applies to employees of government entities. However, consistent with its ruling on LE Defendants' motion, the Court will grant Van Valkenburg's dismissal in his official capacity from Marble's state law claims as

redundant.  However, Marble will be permitted to amend his Complaint to name Van Valkenburg in his individual capacity for each of his timely state law claims.

### D. Remaining Claims

The Court will not address Van Valkenburg's remaining arguments that dismissal is warranted for Counts I, III, IV, and IX as the Court has already dismissed these claims on other grounds.[6]

### Conclusion

In sum, Count I is dismissed as time barred.  Count II shall go forward as to Giffin, Dominick, Taylor, and Van Valkenburg.  Count III is dismissed as duplicative.  Count IV is dismissed for failure to state a claim.  Having dismissed all parties from Count V, this claim is now dismissed.  Count VI shall go forward as to Giffin and Taylor.  Having dismissed all parties from Count VII, this claim is now dismissed.  Count VIII shall go forward as to Missoula County.  Count IX is dismissed as time barred.  Count X shall go forward as to Johnson, Missoula County, the Missoula County Sherriff's Office, and the Missoula County Attorney's Office ("County Entities").  Count XI shall go forward as to Johnson and County Entities.  Count XII shall go forward as to Johnson and County

---

[6] Van Valkenburg also argues for his dismissal from Count VIII—Marble's *Monell* claim.  (Doc. 11 at 23.)  Such argument is unnecessary as Marble does not name Van Valkenburg as a defendant under that count.  (Doc. 3 at 56.)

Entities.  Count XIII shall go forward as to Johnson and County Entities.  Count

XIV shall go forward as to Johnson and County Entities.

IT IS ORDERED that Prosecuting Defendants' Motion (Doc. 6) is

GRANTED in part and DENIED in part.

1.  Defendants Brownlow and Paul are dismissed from the case.

2.  Defendant Johnson is dismissed from Marble's claims arising under 42
    U.S.C. § 1983 (Counts I–VII).

3.  Count IX is dismissed as time barred.

IT IS FURTHER ORDERED that Law Enforcement Defendants' Motion

(Doc. 8) is GRANTED in part and DENIED in part.

1.  Count I is dismissed as time barred.

2.  Defendant McMeekin is dismissed from Count II.  Marble may amend
    this claim.

3.  Count III is dismissed as duplicative to Count II.

4.  Count IV is dismissed for failure to state a claim.  Marble may amend
    this claim.

5.  Law Enforcement Defendants are dismissed from Count V.

6.  Defendants Dominick, Meeder, and McMeekin are dismissed from Count
    VI.  Marble may amend this Count to allege McMeekin's involvement.

7.  Count VII is dismissed for failure to state a claim.

8.  All Law Enforcement Defendants are dismissed from Marble's state law
    claims (Counts X–XIV) in their official capacities.

IT IS FURTHER ORDERED that Van Valkenburg's Motion to Dismiss

(Doc. 10) is GRANTED in part and DENIED in part.

1. Van Valkenburg is dismissed from Counts V and VI.

2. Van Valkenburg is dismissed from Count VII.

3. Van Valkenburg is dismissed from Marble's state law claims (Counts X–
   XIV) in his official capacity.  Marble may amend these claims to name
   Van Valkenburg in his individual capacity.

DATED this 13th day of October, 2020.

Dana L. Christensen, District Judge
United States District Court